# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELIZABETH MARIE RODRIGUEZ, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-20-037-RAW |
| BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WAGONER, et al., | ) |
| Defendants. | ) |

## ORDER

Before the court is the motion of defendants Board of County Commissioners of the County of Wagoner and Chris Elliott, in his official capacity, for summary judgment. This lawsuit commenced in the District Court for Wagoner County. The case was removed to this court by defendants. Plaintiff brings claims pursuant to 42 U.S.C. §1983 for the alleged deprivation of the civil rights of a pretrial detainee. Specifically, the First Amended Complaint alleged (1) excessive force [as to all defendants], (2) medical indifference [as to defendants Sampson and Sheriff Elliott], (3) failure to intervene [as to all defendants] and (4) an official liability claim [as to Wagoner County].

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P. A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party; a fact is material when it might affect the outcome of the suit under governing law. *See Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1187 (10th Cir.2016). The court must view all evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC,* 887 F.3d 1003, 1026 (10th Cir.2018). The court's duty is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Ohlsen v. United States,* 998 F.3d 1143, 1153 (10th Cir.2021).

Official capacity claims are considered to be claims for municipal liability and are thus one and the same as suing the county, and the court therefore applies municipal liability law to all §1983 claims asserted against the county and Sheriff Elliott sued in his official capacity. *See Seals v. Jones,* 2014 WL 3818280, *12 (N.D.Okla.2014).

A municipality is not liable solely because its employees cause injury. *Jackson v. City and County of Denver,* 2022 WL 120986, *3 (10th Cir.2022). Instead, to establish municipal liability, a plaintiff must show both the existence of a municipal policy or custom and also a direct causal link between the policy or custom and the injury alleged. *Id.*

A municipal policy or custom may take many forms: a formal regulation or policy; a widespread, permanent, and well-settled custom; a decision by an employee with final

policymaking authority; a final policymaker's ratification of both an employee's unconstitutional actions and the basis for them; or the deliberately indifferent failure to appropriately hire, train, supervise, or discipline employees. *Id.*

In determining whether an official has final policymaking authority, the court looks to state and local law. *Id.* at *4. The court looks only at where statutory policymaking authority lies, rather than where *de facto* authority may reside. *Id.* Three factors help the court decide whether an individual is legally a final policymaker for a municipality: (1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final, i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly make by the official is within the realm of the official's grant of authority. *Id.*

The factual basis for the court's decision is as follows.[1] Plaintiff was a pretrial detainee in the Wagoner County Jail from March 27, 2017 until convicted on October 22, 2018. She was then transferred on October 24, 2018. Plaintiff had episodes in jail in which she attempted to kill herself or otherwise raised concerns for self-harm. She was also involved in numerous altercations with other inmates or with jailers. Plaintiff admits that, as of June 4, 2018, she had a long history of not following orders from the jail staff. On the

---

[1] Plaintiff asserts: "Many of the SMF of movants are not material and as such no response to them is needed." (#76 at n.1). The court disagrees. *See Turner v. Klika,* 2011 WL 4528423, *3 (W.D.Okla.2011); *Herrion v. Children's Hosp. Nat'l Med. Ctr.,* 786 F.Supp.2d 359, 362 (D.D.C.2011)("irrelevant and immaterial" challenges are "patently insufficient to controvert the truth of the matters identified").

morning of June 4, 2018, plaintiff was involved in a fight with another female inmate in the jail.

As a result, plaintiff was visited in her cell by Judy Elliott, Sheriff Elliott and other jail staff. She was told she would be placed on "lockdown." Plaintiff told jail staff she refused the order. After she had returned from the medical staff for an unrelated condition, defendants Riggs (Undersheriff) and Sampson (present movant) came to her cell and again told her she would be placed on lockdown. Plaintiff stated she would kill herself if she had to lockdown. Plaintiff asserts she then got into an altercation with Riggs and Sampson. She asserts Sampson touched her back and Riggs put her into a bear hug from behind. She asserts Riggs struck her in the face and applied pressure to her nose with the palm of his hand. (#75-1 at page 7 of 43 in CM/ECF pagination, ll.16-20).

As depicted in the jail video (#63-9), plaintiff was later confronted in the open pod by Sheriff Elliott, Judy Elliott, and Sampson. Sampson walked behind where plaintiff was seated and patted her with one hand on her back or side area, which was intended as "a prompt to get up." (#63-8 ¶8). Plaintiff told Sampson not to touch her, Upon plaintiff's refusal to stand, Sampson grabbed plaintiff to physically direct her to her cell. At this time, movant was standing several feet away.

Plaintiff resisted, and Sheriff Elliott grabbed her by the hair bun on top of her head. Sheriff Elliott pulled plaintiff's hair and (in conjunction with Sampson) directed her to her cell. Patrick then noticed for the first time that plaintiff was being held by the hair. Patrick

was too far away to intervene. Patrick was ordered to get plaintiff's clothes off. Patrick did so using "trauma scissors" with smooth edges. As plaintiff was physically resisting, Patrick pushed plaintiff's feet against plaintiff's buttocks to protect Patrick from any kicking or gyrations by plaintiff. (#65-14 at ¶24). Plaintiff was placed in a "turtle suit," an anti-suicide smock.

The only physical condition plaintiff claims to have resulted from the Sampson incident was soreness in her neck, which lasted approximately one week. (#75-1 at page 35 of 43, ll.17-23). She assumes the cause was Sheriff Elliott grabbing her hair. (#75-1 at page 36 of 43, ll.1-2). Plaintiff has never had any medical diagnosis or assessment regarding any conduct on the part of Sampson. (#75-1 at page 35 of 43, ll.10-13). She does not believe anything Patrick did contributed to her neck soreness. (#65-5 at page 23 of 47, ll.11-14).

Plaintiff turned in a medical request on June 4, 2018 regarding ear pain. She was treated that day and treated again for each of the next few days. The record does not reflect any role or knowledge on Sampson's part. (#63-8, ¶¶20-27). Plaintiff claims no lasting effects or permanent impairment from her ear condition.

Plaintiff has not disputed movants' statement of undisputed facts regarding policies of the jail involving situations of this type. *See* #59 at page3 of 28, ¶¶35-38. Plaintiff has disputed ¶34, but not (in the court's view effectively).

The court incorporates by reference the companion orders ruling on other defendants' motions for summary judgment in their individual capacity. The court ruled that the plaintiff

5

had failed to establish a constitutional violation, either in reference to the first prong of qualified immunity analysis or otherwise. On that basis, the present motion should also be granted. A municipality may not be held liable where there was no underlying constitutional violation by any of its officers. *Donahue v. Wihongi,* 948 F.3d 1177, 1199 (10th Cir.2020).

More specifically as to the present motion, plaintiff has pointed out that the sheriff is responsible for the jail under Oklahoma law. *See* 19 O.S. §§513 & 547(A). As an earlier order (by Judge Heaton) in the case at bar noted: "Under Oklahoma law, the county sheriff is ordinarily the final policymaker as to the county jail." *Rodriguez v. Bd. of Co. Comm'rs,* 2020 WL 1979329, *2 (E.D.Okla.2020).

Assuming *arguendo* a constitutional violation, however, plaintiff has not established a causal link between any county policy (as defined above) and the violation. Plaintiff argues that Judy Elliott, a 911 coordinator, had no authority to give orders in the jail and any of her directives were therefore arbitrary and unlawful. The court agrees with movants' assertion: "that Sheriff Elliott may have delegated some authority to Judy to discipline inmates does not constitute a policy or custom, nor did it make Judy Elliott a final policy-maker" (#85 at 5).[2]

---

[2] Judy Elliott was an employee of the Board.  (#91-1 at page 10 of 69 ll.6-7).

It is the order of the court that the motion for summary judgment of defendants Board of County Commissioners and Chris Elliott, in his official capacity (#59) is hereby granted.

**IT IS SO ORDERED** this 3rd day of MARCH, 2022.

Ronald A. White
United States District Judge
Eastern District of Oklahoma