# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **ELIZABETH MARIE RODRIGUEZ,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-037-RAW |
| | ) |
| **BOARD OF COUNTY** | ) |
| **COMMISSIONERS OF THE** | ) |
| **COUNTY OF WAGONER, et al.,** | ) |
| | ) |
| Defendants. | ) |

# **ORDER**

Before the court is the motion of defendants Chris Elliot, Judy Elliot, and Todd Riggs for summary judgment. This lawsuit commenced in the District Court for Wagoner County. The case was removed to this court by defendants. Plaintiff brings claims pursuant to 42 U.S.C. §1983 for the alleged deprivation of the civil rights of a pretrial detainee. Specifically, the First Amended Complaint alleged (1) excessive force [as to all defendants], (2) medical indifference [as to defendants Sampson and Sheriff Elliott], (3) failure to intervene [as to all defendants], and (4) an official liability claim [as to Wagoner County].[1]

---

[1] Some defendants have disputed whether plaintiff also asserts a claim for substantive due process. The present movants have not disputed this and have moved for summary judgment on this claim as well.

Chris Elliott is the Sheriff of Wagoner County, Judy Elliott (his wife) is the 911 coordinator and jail consultant for Wagoner County, and Todd Riggs ("Riggs") is the Undersheriff for Wagoner County.  Plaintiff's response (#77) expressly (in title and text) does not respond to the pending motion as to Judy Elliott.  Accordingly, summary judgment will be granted as to her.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) F.R.Cv.P.  A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party; a fact is material when it might affect the outcome of the suit under governing law.  *See Foster v. Mountain Coal Co.,* 830 F.3d 1178, 1187 (10th Cir.2016).  The court must view all evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC,* 887 F.3d 1003, 1026 (10th Cir.2018).  The court's duty is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *See Ohlsen v. United States,* 998 F.3d 1143, 1153 (10th Cir.2021).

Where, however, a §1983 defendant raises qualified immunity as a defense, the standard for reviewing a motion for summary judgment is different.  A §1983 defendant's assertion of qualified immunity is an affirmative defense that creates a presumption that the defendant is immune from suit.  *See Truman v. Orem City,* 1 F.4th 1227, 1235 (10th

Cir.2021). When the defense is raised, as movants have here[2], the burden shifts to the plaintiff to show that (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Halley v. Huckaby,* 902 F.3d 1136, 1144 (10th Cir.2018).[3] If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment. *Id.*

In determining whether the plaintiff meets this burden, the court ordinarily accepts the plaintiff's version of the facts – that is, the facts alleged. *Id.* At summary judgment, however, because the court is beyond the pleading phase of the litigation, the plaintiff's version of the facts must find support in the record. *Id.* Thus, if the nonmoving party's version of the facts is blatantly contradicted by the record, so that no reasonable jury could believe it, the court should not adopt that version of the facts. *Id.*

To show defendant is not entitled to qualified immunity, a plaintiff must show that (1) the facts that the district court ruled a reasonable jury could find would suffice to show a legal violation, and (2) the law was clearly established at the time of the alleged violation. *Id.* A constitutional right is clearly established if it is sufficiently clear that every reasonable

---

[2] A qualified immunity defense is only available to parties sued in their individual capacities. *Beedle v. Wilson,* 422 F.3d 1059, 1069 (10th Cir.2005). The motion of movants Judy Elliott and Todd Riggs for dismissal in their official capacities was previously granted (#31).

[3] This court may exercise its sound discretion in deciding which of the two prongs should be addressed first. *See Frasier v. Evans,* 992 F.3d 1003, 1033 (10th Cir.2021). If the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense. *A.M. v. Holmes,* 830 F.3d 1123, 1134-35 (10th Cir.2016).

official would have understood that what he is doing violates that right. *Id.* A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right. *Id.* The question is not whether a "broad general proposition" was clearly established, but whether the violative nature of particular conduct was clearly established. *Id.*

The Fourteenth Amendment governs excessive force claims by pretrial detainees. *Nosewicz v. Janosko,* 857 Fed.Appx. 465, 468 (10th Cir.2021). A defendant violates the Fourteenth Amendment by purposely or knowingly using force against a pretrial detainee that is "objectively unreasonable." *Id. See Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015).

Objective reasonableness turns on the facts and circumstances of each particular case. *Id.* The court (or a jury) makes this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *Id.* Among the non-exclusive factors bearing on the question are the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Id.* at 469.

The factual basis for the court's decision is as follows. Plaintiff was a pretrial detainee in the Wagoner County Jail from March 27, 2017 until convicted on October 22, 2018. She was then transferred on October 24, 2018. Plaintiff had episodes in jail in which

she attempted to kill herself or otherwise raised concerns for self-harm. She was also involved in numerous altercations with other inmates or with jailers. Plaintiff admits that, as of June 4, 2018, she had a long history of not following orders from the jail staff. On the morning of June 4, 2018, plaintiff was involved in a fight with another female inmate in the jail.

As a result, plaintiff was visited in her cell by Judy Elliott, Sheriff Elliott and other jail staff. She was told she would be placed on "lockdown." Plaintiff told jail staff she refused the order. After she had returned from the medical staff for an unrelated condition, defendants Riggs (Undersheriff) and Sampson (present movant) came to her cell and again told her she would be placed on lockdown. Plaintiff stated she would kill herself if she had to lockdown. Plaintiff asserts she then got into an altercation with Riggs and Sampson. She asserts Sampson touched her back and Riggs put her into a bear hug from behind. She asserts Riggs struck her in the face and applied pressure to her nose with the palm of his hand. (#75-1 at page 7 of 43 in CM/ECF pagination, ll.16-20).

As depicted in the jail video (#63-9), plaintiff was later confronted in the open pod by Sheriff Elliott, Judy Elliott, and Sampson. Sampson walked behind where plaintiff was seated and patted her with one hand on her back or side area, which was intended as "a prompt to get up." (#63-8 ¶8). Plaintiff told Sampson not to touch her, Upon plaintiff's refusal to stand, Sampson grabbed plaintiff to physically direct her to her cell. At this time, Patrick was standing several feet away.

Plaintiff resisted, and Sheriff Elliott grabbed her by the hair bun on top of her head. Sheriff Elliott pulled plaintiff's hair and (in conjunction with Sampson) directed her to her cell. Patrick then noticed for the first time that plaintiff was being held by the hair. Patrick was too far away to intervene. Patrick was ordered to get plaintiff's clothes off. Patrick did so using "trauma scissors" with smooth edges. As plaintiff was physically resisting, Patrick pushed plaintiff's feet against plaintiff's buttocks to protect Patrick from any kicking or gyrations by plaintiff. (#65-14 at ¶24). Plaintiff was placed in a "turtle suit," an anti-suicide smock.

The only physical condition plaintiff claims to have resulted from the Sampson incident was soreness in her neck, which lasted approximately one week. (#75-1 at page 35 of 43, ll.17-23). She assumes the cause was Sheriff Elliott grabbing her hair. (#75-1 at page 36 of 43, ll.1-2).

Even viewing the record in the light most favorable to plaintiff, the court finds she has failed to meet her burden as to the asserted defense of qualified immunity regarding excessive force. The force used by Riggs was not objectively unreasonable in the context of jail security. Sheriff Elliott asserts as a matter of fact that the hair pull was accidental. (#60 at page 12 of 34, ¶24).[4]   In the reply, the following assertion is made: "Although Plaintiff contends that Sheriff Elliott's grabbing her by the hair was not accidental, her

---

[4] Citation is made to his declaration (#60-8), but the pertinent page is not present. In any event, the court makes no finding of fact on this point for the reasons stated.

contention in this regard is wholly without evidentiary support." (#84 at pages 6-7 of 12). The court does not adopt this argument. There is no dispute that a hair pull occurred. Intent may or may not be inferred, and that would be an issue for the fact-finder. The court finds as a mater of law, however, that even if the hair pull were intentional it was relatively brief and does not rise to the level of violation of a constitutional right. Therefore, plaintiff has not demonstrated a genuine issue of material fact as to the first prong of the qualified immunity analysis as to either Riggs or Sheriff Elliott. Plaintiff has also failed to demonstrate that the law was clearly established that the <u>particular</u> conduct of either Riggs or Elliott was of a violative nature, thus failing the second prong as well.

Plaintiff turned in a medical request on June 4, 2018 regarding ear pain. She was treated that day and treated again for each of the next few days. The record does not reflect any role or knowledge on Sampson's part. (#63-8, ¶¶20-27). Plaintiff claims no lasting effects or permanent impairment from her ear condition.

Under the Fourteenth Amendment's due process clause, pretrial detainees are entitled to the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment. *Frohmader v. Wayne,* 958 F.2d 1024, 1028 (10th Cir.1992). In either type of case, claims of inadequate medical attention are judged by the test of "deliberate indifference to serious medical needs." *Id.*

Deliberate indifference involves both an objective and a subjective component.[5] The

---

[5]*Kingsley* did not pronounce its application to such a claim. *See Strain v. Regalado,* 977 F.3d 984, 993 (10th Cir.2020).

objective component is met if the deprivation is "sufficiently serious." *Sealock v. Colorado,* 218 F.3d 1205, 1209 (10th Cir.2000). A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Id.* The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health and safety. *Id.* A delay in providing medical care does not amount to a violation of the detainee's rights unless the delay resulted in substantial harm. *Id.* at 1210. Substantial harm is a lifelong handicap, permanent loss, or considerable pain. *Al-Turki v. Robinson,* 762 F.3d 1188, 1193 (10th Cir.2014).

Even viewing the record in the light most favorable to plaintiff, the court finds that Sheriff Elliott is entitled to qualified immunity as to this claim as well. As to the first prong, plaintiff has not established either the objective or the subjective component. Her earache (and previous toothache) were not "sufficiently serious" as used in this context. Moreover, the Sheriff delegated such matters to the jail's medical staff and no evidence has been presented of his knowledge of an excessive risk to plaintiff's health and safety. Of course, using the medical staff to establish "ignorance" would not be availing under certain facts, but such facts are not presented in the case at bar. As to the second prong, plaintiff has failed to show the law was clearly established as to the Sheriff's particular conduct and her particular medical complaints.

An officer who fails to intervene to prevent a fellow officer's excessive use of force

may be liable under §1983. *Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir.2008). In order for liability to attach, however, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm caused by another officer is usually an issue of fact. *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir.2008). As to these movants, plaintiff's argument is that they "could have prevented Judy Elliott's unlawful commands." (#77 at 12). Plaintiff contends that Judy Elliott was without authority to direct plaintiff be placed in the "turtle suit" and that such unlawful order was <u>punishment</u> rather than concern for inmate self-harm. Even if this were correct (and plaintiff has cited no case law and has not responded to the present motion as to Judy Elliott), the court finds it does not render Riggs and Sheriff Elliott liable for failing to intervene. Directing the donning of an anti-suicide smock is not excessive force. Plaintiff having failed on the first prong of her burden as to qualified immunity, summary judgment will be granted as to the failure-to-intervene claim as to movants.

Finally, plaintiff contends she has also asserted a claim for violation of substantive due process. Unlike some other defendants, present movants included this claim in the original motion for summary judgment. Claims for substantive due process find their basis in the Fourteenth Amendment's protections against arbitrary government power. *Lindsey v. Hyler,* 918 F.3d 1109, 1115 (10th Cir.2019). A violation of substantive due process may arise in two ways – from (1) legislative acts that infringe on a fundamental right, or (2) official

conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience. *Id.* Plaintiff's claim involves the second way. The court does not find any of movant's conduct arbitrary or shocking to the judicial conscience. The force used has already been addressed. As stated, plaintiff contends she was required to put on the anti-suicide smock as punishment. Under the facts of the case, however, the court does not find such to be arbitrary, even if characterized as punishment. The First Amended Complaint alleges a conspiracy among defendants (#9 at 4, ¶16) but plaintiff has not presented a genuine dispute of material fact on this point.

It is the order of the court that the motion for summary judgment (#60) of defendants Chris Elliot, Judy Elliot, and Todd Riggs in their individual capacities is hereby granted.

**IT IS SO ORDERED** this 3rd day of MARCH, 2022.

Ronald A. White
United States District Judge
Eastern District of Oklahoma